**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

EZELL LANDRUM                                                                                    PLAINTIFF

VS.                                                              CIVIL ACTION NO. 4:13-CV-00180-JMV

DELTA REGIONAL MEDICAL CENTER                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Delta Regional Medical Center's

("DRMC") Motion for Summary Judgment [30] on the *pro se* plaintiff's complaint for

gender/race discrimination and retaliation pursuant to Title VII. The matter has been fully

briefed, and the Court finds, for the reasons discussed below, the motion is well taken.

## FACTS

The plaintiff, Ezell Landrum, was first employed by DRMC in 1994, and he was working

as a registered nurse in the Solutions Adult-Psychiatric Unit of DRMC (hereinafter referred to as

"Solutions") under Director Jessica Willis, a white female, when he was first terminated on June

25, 2010, due to repeatedly failing to complete nursing assessments and documentation. *See*

Landrum Dep. 49-50; Jessica Willis Aff. (and Exhibit 4 attached thereto). Although Willis

initially classified Landrum as not eligible for rehire, he was given a second chance by her in

August 2011, when he again went to work at DRMC's Solutions. *See* Willis Aff.

On March 21, 2013, Landrum was again terminated, this time for allegedly failing to

perform his responsibility for monitoring patients. *See* Willis Aff. (and Exhibit 8 attached

thereto). Specifically, DRMC asserts that on March 14, 2013, Willis learned female patients had

complained that a male patient was roaming the halls knocking on doors the previous night. *Id.*

According to DRMC, Willis contacted hospital security, and she and a security officer reviewed the video surveillance film of the evening in question which showed Landrum enter non-patient rooms and remain for several hours during the time the male patient roamed the halls and knocked on doors. *Id.*

On March 29, 2013, Landrum filed an EEOC Charge of Discrimination (" Charge") against DRMC wherein he alleged discrimination on the basis of gender and retaliation. *See* Charge attached to Compl. Doc. #4. In his Charge, Landrum asserted that his gender discrimination is "based on [DRMC employee] Jessica Willis' longstanding and ongoing disparate treatment, harsh disciplinary action and punishment of me as a male staff member." Landrum further asserted in the Charge that "female staff members in my department do not receive disciplinary action to the degree and extent that I have received for similar allegations and countless situations." No allegations pertaining to race were made in the Charge. In support of the remaining claim, Landrum asserted in the Charge, "Retaliation based on my on going request for Director, Jessica Willis, to provide reasonable accommodations and safe environment for mentally disabled patients."

On July 26, 2013, the EEOC issued its right to sue. *Id.* On October 11, 2013, Landrum commenced this action by motion to proceed *in forma pauperis*–which was denied–and on December 4, 2013, Landrum filed his Complaint against DRMC. In his Complaint, Landrum also included a claim for discrimination based upon race. *See* Compl., Doc. #4, ¶ 10.

During his deposition, Landrum testified that his termination of March 2013 was the last discriminatory act in a "pattern" of acts dating back to his first tenure at DRMC. When asked to describe specifically each complained of discriminatory act, Landrum identified three occasions

where he received disciplinary action:

*June 25, 2010*

As noted above, Landrum was terminated June 25, 2010, for, according to DRMC, his failure to complete nursing assessments and documentation. *See* Landrum Dep. 49-50. Landrum testified that this was the first occasion of discrimination against him. *Id.* Landrum claims that two other similarly situated female employees were treated more favorably for the same or similar conduct. *Id.* at 51-52. Landrum conceded that even though he thought this was discriminatory conduct when it occurred, he did not file a Charge of Discrimination within 180 days. *Id.* at 52. Not only did he not file a charge within the statutory period, the Charge attached to the instant Complaint is silent as to this alleged discriminatory event. Moreover, this event is not mentioned in the Complaint. To the contrary, the Complaint alleges the discrimination began in November 2012 and ended March 21, 2013. *See* Compl. ¶ 5B [Doc. #4].

*April 19, 2012*

On April 19, 2012, Landrum having been rehired by DRMC in August 2011, received a Counseling Memorandum and a three-day suspension for failure to notify the director and nursing supervisor of a patient falling which necessitated medical attention on April 8, 2012. *See* Landrum Dep. 58-66. *See* Willis Aff. (and Exhibit 6 thereto). It is uncontested that a female nurse, Marcia Kidd, RN, also received the identical Counseling Memorandum and a three-day suspension. *See* Willis Aff. (and Exhibit 7 attached thereto). Landrum did not file an EEOC Charge within 180 days relating to this adverse employment action either. Nor is this event referred to in the Charge attached to the Complaint, or even mentioned in the Complaint. As noted, the Complaint itself specifically alleges the discrimination began in November 2012 and

ended March 21, 2013. *See* Compl. ¶ 5B [Doc. #4].

*March 13-14, 2013*

This is the incident recounted above for which Landrum was most recently terminated, where DRMC claims that female patients complained that a male patient was walking the halls during the night knocking on their doors, and Landrum, who was responsible for monitoring the patients, was observed on video surveillance entering a non-patient room for hours at a time. It is uncontested that during the course of the investigation of this incident, Willis also observed the conduct of a female employee going into a room and not coming out for several hours. *See* Willis Aff. (and Exhibit 9 attached thereto). Like Landrum, that female employee was also terminated by Willis for this conduct. *Id.*

Regarding his retaliation claim, Landrum explained at his deposition that his March termination was based on false allegations made up to serve as a pretext for a desire to terminate him because he had previously recommended and requested that certain safety protocols, used at other facilities and recommended by a hospital oversight commission, be adopted at Solutions. According to Landrum it was, in particular, the failure to have earlier removed closet doors that contributed to the suicidal death by hanging of one of the Solution's patients. Landrum Dep. 126.

Though Landrum asserts in his *pro se* complaint that his retaliation charge is brought pursuant to Title VII, it appears to the Court that the substance of the claim may be that plaintiff was retaliated against for engaging in protected activity under the American with Disabilities Act (ADA). Accordingly, while the Court has addressed all of plaintiff's Title VII claims below, their disposition leaves pending and un-briefed the viability of a retaliation claim under the

ADA, if any is, in fact, properly before the Court.

## SUMMARY JUDGMENT STANDARD

The standard of review in actions of this sort was explained in *Brewer v. Alliance Healthcare Services*, No. 4:11CV130-SA-JMV, 2013 WL 1896132 (N.D. Miss. May 6, 2013):

> Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
> Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact ." FED. R. CIV. P. 56(c). The court is only obligated to consider cited materials but may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

*Brewer*, *supra,* at *2.

## DISCUSSION AND ANALYSIS

I. Race Discrimination

Although Landrum did not charge discrimination on the basis of race in his Charge of Discrimination before the EEOC, he does so in his Complaint. Landrum cannot proceed before this Court on his race discrimination claims because he did not sufficiently raise them in his

EEOC charge. *Sapp v. Potter*, 413 Fed. App'x. 750, 752 (5th Cir. 2011) (finding it "well-settled law of this circuit that a public employee cannot proceed in a Title VII action until that employee has exhausted all available administrative remedies"). Furthermore, in his deposition, Landrum conceded that he is making no claim in this lawsuit that he was ever discriminated on the basis of his race. *See* Landrum Dep. 46-49. Accordingly, the claim of discrimination on account of race is dismissed with prejudice.

II. Gender Discrimination

A. The 2010 termination and 2012 three-day suspension.

Landrum's claims for discrimination in June, 2010 (a termination) and April, 2012 (a three-day suspension) are plainly time barred. No charge pertaining to either of these events has ever been filed with EEOC, and for that matter, they are not even referenced in the Complaint which itself limits the complained of conduct to a period between November 2012 and March 2013. Landrum's effort to resurrect these occurrences as a basis for a valid gender discrimination claim by asserting, vaguely, a "pattern" claim (aka a "continuing violation") is meritless. The continuing violation doctrine relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir. 1998) (quoting *Messer v. Meno,* 130 F.3d 130, 134–35 (5th Cir. 1997)). However, the continuing violation doctrine is not applicable to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Mayers v. Laborers' Health & Safety Fund of N. Am.,* 478 F.3d 364, 368 (D.C. Cir. 2007) (applying *Morgan* to ADA

claims).

Moreover, "where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she cannot reach back and base her suit on conduct that occurred outside the statute of limitations." *See Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 537 (5th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U. S. 53 (2006); *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 352 (5th Cir. 2001). Since the complained of acts were discreet, *i.e.*, 2010 termination and a 2012 three-day suspension, and since plaintiff even acknowledged his believing the earlier complained of action(s) were discriminatory when they occurred, the continuing violation doctrine  has no application in this case.

Finally, and in any event,  for the continuing violation doctrine to save an otherwise time barred complaint, at least one discriminatory event must have occurred within the actionable period.  Because, as explained below, the last complained of event (March 2013) was not an action in violation of the prohibition against gender discrimination, it avails plaintiff nothing.

B. The 2013 termination.

"In employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence, or both." *Jackson v. Cal-Western Packaging Corporation*, 602 F.3d 374 (5th Cir. 2010), citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002).   Since Landrum does not rely on direct evidence of gender discrimination, whether he can establish a prima facie case based upon circumstantial evidence must be examined under the framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To establish a prima facie case of gender discrimination (in a case such as this),

Landrum must show the following: (1) that he was a member of a protected group; (2) he was qualified for the position in question; (3) he was subjected to an adverse employment action; and (4) received less favorable treatment due to his membership in the protected class than did other similarly situated employees who were not members of the protected class, under nearly identical circumstances (and/or, in the case of termination, was replaced by a different gender) *Brewer v. Alliance Healthcare Services, supra*, citing *Wesley v. Gen. Drivers, Warehousemen & Helpers Local* 745, 660 F. 3d 211, 213 (5th Cir. 2011); *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2011).

In the instant case, Landrum offers no evidence to support a contention that when he was terminated in March 2013, he was either replaced by another gender or that a similarly situated female under nearly identical circumstances was not terminated. On the contrary, rather than identifying a satisfactory comparator of a different gender and evidence from which the Court could determine whether they were similarly situated or whether their offenses were sufficiently similar, Landrum insists that the other employee, a female also observed on the video doing the same thing he did, *and who was also terminated as a result*, was *not* similarly situated for Title VII purposes. Landrum may not establish a prima facie case of discrimination arising from his March termination under these circumstances. *See Graham v. Bluebonnet Trails Community Services*, 587 F. App'x. 205 (5th Cir. 2014).[1]

_____

[1] The *Graham* court reasoned as follows:

Although . . . [Graham] names other individuals of different races and claims that they were treated more favorably, she does not point to any evidence that would have allowed the district court to determine whether they are similarly situated or whether their work suffered from the same shortcomings that Bluebonnet alleges about Graham's. Even when specific comparators are identified, we require a significant degree of similarity between the plaintiff's situation and that of the comparators. . . . In this case, we cannot

III. The Retaliation Claim

A. Title VII

Landrum alleges he was retaliated against, in violation of Title VII because of his "repeated requests to provide reasonable accommodations and a safe environment for mentally disturbed patients." *See* Complaint, ¶ 10 [Doc. #4]. A plaintiff alleging retaliation under Title VII must demonstrate a *prima facie* case by establishing "(1) he engaged in activity protected by Title VII; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (citing *Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 540 (5th Cir. 1998)). Protected activity is defined by courts as "(1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter,' or (2) 'ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Id.* (citing 42 U.S.C. § 2000e-3(a)). Landrum cannot satisfy the first prong of the test for retaliation under Title VII because the requests for accommodations for patients, assuming he made such recommendations, was not "protected activity" as defined under Title VII as set forth in *Byers*, *supra*. Without being able to show engagement in a protected activity under Title VII, he also cannot demonstrate the requisite

---

even engage in that analysis because Graham offers no facts from which we can determine whether the individuals 'being compared held the same job or responsibilities [and] shared the same supervisor or had their employment status determined by the same person.'. . . She simply asserts that these individuals were given preferential treatment without offering the details that the inquiry requires. Without similarly situated comparators of a different race who were allegedly treated more favorably, there is no basis for a factfinder to infer discrimination.

*Graham*, 587 F. App'x at 207.

causal connection between the protected activity and the adverse employment action, making summary judgment appropriate on his Title VII claim for retaliation.

B. ADA

As earlier stated, though Landrum has asserted his retaliation claim under Title VII, and defendant has only addressed the retaliation claim pursuant to Title VII, because Landrum is *pro se* and because the terminology he uses in making his retaliation claim sounds in the nature of an ADA claim, the Court finds it will be necessary to require additional briefing on this issue should the parties desire the Court to consider the same by way of dispositive motion. **Accordingly, the defendant is granted an additional 21 day period (from this date) to do so, and plaintiff shall have 14 days thereafter to respond. Defendant's reply will be due 7 days thereafter.**

<u>**CONCLUSION**</u>

For the foregoing reasons, the defendant is granted summary judgment as to all of Plaintiff's Title VII claims. To the extent plaintiff has asserted a retaliation claim under the ADA, and to the extent it is properly before the Court, that issue remains pending.

**SO ORDERED** this 6th day of February, 2015.

/s/ Jane M. Virden
U. S. Magistrate Judge