**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**EZELL LANDRUM**                                                                  **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO.: 4:13-cv-180-JMV**

**DELTA REGIONAL MEDICAL CENTER**                                **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the court on Defendant's Supplemental Motion for Summary Judgment [36] as invited by this court's prior order on Defendant's Motion for Summary Judgment [35]. Upon due consideration of the supplemental motion, Plaintiff's response, the reply, and relevant law, the court finds the motion well taken and, it should be granted as explained below.

By its prior order [35], this court noted that though Plaintiff failed to check the box on his form pro se complaint [4] marked "ADA" ( aka "the Americans with Disabilities Act" hereinafter sometimes "the Act") as a basis for the asserted retaliation claim, the narrative language used in his complaint is that familiar to the Act. However, because the Defendant did not address whether the retaliation claim, properly construed, was one brought under the ADA,[1] the court did not rule on the issue. The Defendant has now raised the issue by supplemental motion for summary judgment, and it makes two arguments in opposition to any alleged retaliation claim under the ADA. First, Defendant argues Plaintiff's complaint does not assert an ADA retaliation cause of action because Plaintiff did not check the box "ADA" in his form complaint or reference the Act in his EEOC charge. Second, Defendant contends even had Plaintiff done so, certain Fifth Circuit decisions preclude Plaintiff, as a matter of law, from

---

[1] In its original motion for summary judgment, Defendant addressed the retaliation claim under Title VII, and the court found summary judgment in Defendant's favor was proper on that claim.

establishing a prima facia case of retaliation under the ADA. In particular, defendant argues in order to be actionable, the alleged retaliation must have been in response to an employee's complaint of the employer's discrimination against that employee or another employee. Defendant asserts there is no cognizable claim for retaliation in response to an employee's complaint of the employer's discrimination against *non*-employees, such as the mentally ill patients at the Defendant hospital.

The court is prepared to rule on the matter. In doing so, it will adopt by reference, as if fully stated herein, its recitation of facts and standard of review set out in its original opinion [35].

## **Law and Analysis**

In addressing Defendant's arguments, the court considers the lenient pleading standard for pro se plaintiffs. Even though plaintiff did not check the box marked "ADA" in his complaint or reference it in his EEOC charge, both the complaint and EEOC charge contain narrative language applicable to ADA claims (i.e., reasonable accommodations necessitated by an asserted physical/mental condition). Specifically, the charge filed by the Plaintiff and attached to his complaint recites in pertinent part as follows:

> I have also personally requested that Jessica Willis provide reasonable accommodations for mentally disabled patients along with requesting changes with department practices to promote a safe environment …. Retaliation based on my ongoing request for (Director) Jessica Willis to provide reasonable accommodations and safe environment for mentally disabled patients. The reason given for my termination by DRMC Human Resource Director and Department Director was carefully, strategically and constructively utilized for a grand opportunity to terminate me.

Compl. [4] at 9. Similarly, his pro se complaint states, under the portion requiring a narrative description of the complained of conduct: "Plaintiff's earlier complaint of discrimination or

opposition to acts of discrimination. (If you are alleging Retaliation, state the acts or events that you claim constitute retaliation: 'repeated requests for reasonable accommodation and safe environment or mentally disturbed ….')" *Id.* at 3.

Given the plain language of the EEOC Charge and the pro se complaint, the court ordinarily would not be convinced Plaintiff's failure to formally reference the ADA in his pro se complaint and/or in the EEOC charge is fatal to a retaliation claim under the ADA. However, in this case, the Plaintiff, by way of responsive pleading, has confirmed that as a matter of fact, he did not intend to make a claim under the ADA since he "had no idea that an action could proceed under the ADA . . ." On the basis of this concession and for the additional reason, as explained below, even had such a claim been asserted or could be construed to have been asserted in light of plaintiff's pro se status, the Defendant is nevertheless entitled to summary judgment.

Defendant argues, irrespective of whether Plaintiff expressly referenced the ADA in his complaint and/or EEOC charge, as a matter of the substantive law, an employee may not assert a retaliation claim if the adverse employment action (in this case, termination) was in response to the employee's complaints about treatment of non-employees—such as the patients of the defendant hospital. For support, Defendant relies on cases holding a retaliation claim under Title VII does not protect an employee from adverse action for complaining about alleged discrimination against non-employees. *See* Def.'s Supplemental Br. in Further Supp. of Mot. for Sum. J. [36] at 4-6. This court acknowledges this proposition is correct under Title VII, but in so far as Plaintiff's retaliation claim at issue here pertains to the ADA, the cases relied on by Defendant are simply not applicable.

Unlike Title VII, the ADA is considerably broader. *See* Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (2015). While Title I relates to private employers, state and

local governments, employment agencies and labor unions and prohibits an employer from discriminating against qualified applicants and employees on the basis of disability, Title II applies to state and local government entities and prohibits them from discriminating against individuals on the basis of disability; and Title III covers public accommodations and commercial facilities prohibiting discrimination, such as in hotels, restaurants, and doctor's offices. *Id.* Further, ADA Code Section 12203, makes it unlawful to retaliate against a person for exercise of the rights conveyed. *See* 42 U.S.C. § 12203 (2015).

In short, the present issue is not whether a Title VII retaliation claim is strictly limited to conduct of and concerning employees. Instead, it is whether the Plaintiff engaged in activity protected under Title II or III of the ADA and, thus, is protected from retaliation under the Act. Specifically, the question is whether Landrum, a public hospital employee, is protected from retaliation for allegedly requesting or complaining to the public hospital that its supervision/treatment of its mentally ill patients should be different from that dictated by the hospital's adopted protocols.

A dearth of Fifth Circuit case law exists on this precise point, but a string of cases decided by the Fourth Circuit, which culminated in *Freilich v. Upper Chesapeake Health Incorporated,* 313 F.3d 205 (4th Cir. 2002) addresses the issue spot on. In that case, Dr. Freilich, a nephrologist, worked at the defendant Hospital. *Id.* at 210. During her tenure, she advocated for the rights of her patients to improve their quality of care, including "complain[ing] that the outsourcing of quality assurance and oversight services for dialysis patients led to an improper standard of care." *Id.* Thereafter, the hospital non-renewed her medical privileges for improper "ethics and behavior." *Id.* She then filed suit, alleging the hospital denied her

4

application for reappointment in violation, *inter alia*, of the ADA because she advocated for the rights of her dialysis patients.

With respect to her retaliation claim, the *Freilich* court affirmed the district court's dismissal of the claim under Rule 12(b)(6) and explained:

> Dr. Freilich brings a claim for retaliatory discharge under the ADA …. She alleges that [the hospital] terminated her hospital privileges "because she strongly opposed and voiced her concerns about [the hospital's] practices in treating dialysis patients." Specifically, Dr. Freilich contends that her opposition to [the hospital's] decision to outsource quality oversight and quality assurance over dialysis services constitutes protected conduct under the ADA. Under 42 U.S.C. § 12203, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice *made unlawful by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." (emphasis added). In order to establish a prima facie case of retaliation, a plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. *Rhoads v. FDIC,* 257 F.3d 373, 392 (4th Cir. 2001). In reviewing retaliation claims, courts recognize the need to balance the desire to encourage employees to oppose unlawful discrimination, with "an employer's interest in maintaining a harmonious, productive and loyal workforce." *Fitch v. Solipsys Corp.,* 94 F.Supp.2d 670, 678 (D.Md. 2000).
>
> A plaintiff need not establish that the conduct she opposed actually constituted an ADA violation. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 357 n. 1 (4th Cir. 1985). But a complainant must allege the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA. *E.g., Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir. 2000).
>
> In her complaint, Dr. Freilich alleges what at most are violations of state medical malpractice law, not infractions of the ADA. Dr. Freilich says that she complained orally and/or in writing regarding the failure to transport a patient in a timely manner; the failure to adhere to skin protocols; the failure to address concerns regarding uncertified nurses; the failure to diagnose a cervical fracture on a patient; the unsupervised dialysis

of a patient; and the failure to provide correct dialysis services for several patients. While we do not overlook the importance of maintaining adequate levels of patient care, it is not the job of a federal court under the ADA to referee disagreements between a hospital and staff physician over what constitutes the appropriate funding or manner of such care. In essence, Dr. Freilich disagrees with the level of care being provided to some hospital patients, which she attributes to the outsourcing of quality assurance and quality oversight for dialysis patients. She could not, however, reasonably believe that her disagreement with [the hospital] over the expenditure of hospital resources constituted a violation of the ADA.

> Every disagreement over the adequacy of hospital expenditures or the provision of patient care is not an ADA issue. If it were, courts would be drawn into medical resource disputes quite beyond their expertise and hospital personnel would be diverted by litigation from their primary task of providing medical attention to those in their charge. Hospitals are in the business of serving persons with many kinds of disabilities, and we have noted that "our federal disability statutes are not designed to ensure that persons with one type of disability are treated the same as persons with another type of disability." *Lewis v. Kmart Corp.,* 180 F.3d 166, 171-72 (4th Cir. 1999). Recognizing that the medical community is best equipped to conduct the balancing that medical resource allocations inevitably require, Congress declined to give courts a mandate to arbitrate such disputes.

*Id.* at 216-17.

Although the patients in the instant case are alleged to have suffered from some form of mental illness, rather than from kidney failure, the cases are otherwise remarkably alike. In *Freilich*, for example, the doctor complained dialysis patients were not observed properly, just as the Plaintiff in the instant case asserts mental illness patients were not supervised adequately.[2] Additionally, as in *Freilich*, the Plaintiff here complains improper protocols for patient care were utilized by the Defendant hospital. In short, this court finds the logic in *Freilich* persuasive.

---

[2] The court finds this ironic given the Plaintiff concedes the hospital terminated him on the asserted (he contends, pretextual) basis that he was not properly observing the mentally ill patients on his floor.

As in Frelich, this court does not overlook the importance of maintaining adequate levels of patient care, but it is not the role of a federal court under the ADA to umpire disagreements between a hospital and staff over what constitutes the most appropriate manner of patient care. Moreover, in this case, Landrum has candidly conceded he did not—and the court concludes, could not—have reasonably believed that his disagreement with the hospital over the level of mentally ill patients' care constituted a violation of the ADA. While, as noted *supra,* a plaintiff need not establish that the conduct she opposed actually constituted an ADA violation, a complainant must allege the predicate for a reasonable, good faith belief that the behavior he/she is opposing violates the ADA. Plaintiff has conceded this element is absent here. Consequently, Plaintiff may not establish a violation of the Act.

### **Conclusion**

For the foregoing reasons, Defendant should be granted judgment on Plaintiff's retaliation claim under the ADA.

**IT IS, THEREFORE, ORDERED** that Defendant is granted summary judgment on Plaintiff's retaliation claim under the ADA. A separate final judgment will be entered.

**SO ORDERED**, this the 6th day of March, 2015.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**